## THE GENESTA.

### THE ADELINA CORVAJA.

### COLLIN v. KIERNAN et al.

### In re KIERNAN et al.

(District Court, S. D. New York. · October 13, 1903.)

1. COLLISION—SCOW IN TOW AND ANCHORED STEAMER—FAILURE OF TUG TO MAINTAIN A GOOD LOOKOUT.

A collision at night between a scow in tow on a hawser and a steamship anchored within the anchorage grounds off the quarantine station in New York Harbor, *held* to have been due solely to the fault of the towing tug for her failure to keep a good lookout and to see and avoid the steamer.

In Admiralty. Suits for collision, and petition for limitation of liability.

James J. Macklin, for the Goodwins.
Benjamin Patterson, for Augusta Collin.
Ullo & Ruebsamen, for the Corvajas.
Carpenter & Park, for the owners of the Genesta.

ADAMS, District Judge. The first of the above actions was a libel filed to recover the damages caused to the owners of Scow W. 17, in tow of the tug Genesta, by a collision with the steamship Adelina Corvaja, anchored off the Quarantine station, Staten Island. The second of the actions was brought by the administratrix of Gustav

Collin, who was in charge of the scow, and lost his life by the scow being overturned in the collision. The third of the actions was brought by the owners of the Genesta, to contest and limit their liability.

The scow, in tow of the Genesta, on a hawser of about 50 or 60 fathoms, left the foot of 19th Street, North River, on the 14th of March, 1902, about 12:45 A. M., bound for the dumping grounds at sea. The tide was ebb and the wind northerly. The tug's speed was about 11 miles with the tide. When off Quarantine the scow came in collision with the steamship, then at anchor, resulting in the capsizing of the scow and the drowning of Collin, who was on board as master.

The libel of Goodwin alleges fault against the Genesta in that she did not keep a proper lookout and avoid the steamship; and against the Corvaja for not maintaining a proper anchor watch, for being at anchor outside of the anchorage limits and for not giving any warning of her presence.

The libel of Collin alleges similar faults.

The petition of the owners of the Genesta alleges fault against the steamship: (1) in coming to anchor in the channel, (2) in not anchoring within anchorage grounds, (3) in not keeping a proper anchor watch, (4) in not paying out chain to avoid the collision; and against the scow, (1) in failing to maintain an efficient lookout, (2) in not cutting the hawser when the collision became imminent, (3) in that she was not in charge of a competent person, because the master did not take effective measures to prevent the collision.

A great many witnesses were examined in support of the allegations. Without now going into the testimony in detail, I have concluded from an examination of it, that the facts, in addition to those expressed above, were briefly as follows:

When the tug and tow reached the vicinity of the steamship, and before she was discovered by those on the Genesta, a snow squall came on, in which the tug proceeded at the same speed. While thus proceeding, the steamship was discovered ahead in close proximity. The tug endeavored to avoid collision by starboarding her helm, the effect of which was to carry the tug to the eastward of the steamship and leave the scow on the westward. They were both carried down by the tide, the tug on the starboard side of the steamship and the scow on the port side, having first come in contact with the anchor chain, with the effect of overturning her. It is evident that the principal causes of the accident were the failure of those on the tug to see the steamship sooner than they did and avoid her.

It is not a case for an apportionment of the damages between the tug and the steamship. I attach more importance to the testimony of those who anchored the latter in the vicinity of other anchored vessels and subsequently removed her to her wharf, than the judgment of witnesses formed for the purposes of the case; and I find, upon the conflicting evidence, that the steamship was within the anchorage limits. The facts that she did not maintain a vigilant anchor watch and pay out chain are immaterial. The rudder could not be used to any advantage, as the tug was on one side and the scow on the

other. What space she could have gained by touching her compressor and drifting astern would not probably have affected the result. The tide and wind were strong towards the steamship, and it can not be assumed for the benefit of the delinquent tug that such action would have been of any benefit. Moreover there was another anchored vessel not far astern with which a collision would have occurred if the anchor had started and the steamer had drifted about two hundred feet.

Collin, the master of the scow, lost his life in the accident. He was a healthy unmarried man about 21 years of age. The damages, however, to his next of kin were not serious. They were not in any way dependent upon him though occasionally he aided them. His earning capacity was $9 per week, and I consider that the sum of $1,000 will be ample to cover their losses. The deceased was not in fault.

There is no dispute about the owners of the Genesta being entitled to a limitation of liability and she has been appraised at $3,375, which, with interest, is the extent of their liability.

Let there be a decree entered limiting the liability of the owners of the Genesta and providing for the recovery of $1,000 by Augusta Collin, as administratrix; also providing for an order of reference to determine the damages of the libellants Goodwin. The libels against the S. S. Corvaja and the Corvajas will be dismissed.